May it please the Court, my name is Ben Shafton and I represent Battle Ground Plaza, LLC in this matter. Can I speak up just a little more? You can raise those up. Thank you. Sorry. I'll start again. May it please the Court, my name is Ben Shafton and I represent Battle Ground Plaza, LLC in this matter. It's referred to in the brief as BGP. I'd like to reserve three minutes for any rebuttal and I will keep track of the time. Can I start with a preliminary question or two? It's normally a standard provision in a Chapter 11 plan that all executory contracts are rejected. Did that happen here? I don't believe that it did. As a matter of fact, I believe that there is a provision in the plan specifically discussing the purchase of the Battle Ground Plaza Shopping Center, that that is specifically discussed. And I believe that there is a reference to the litigation, the specific performance of the litigation in state court as well. Okay. So this is not a case where all of this was wrapped up in the 11 and in the plan and the plan said all existing executory contracts are rejected. That did not happen? No. There are basically two contracts that I think we have to discuss. The first is the purchase and sale agreement for the entire shopping center in which the right of refusal was contained. And the second is the contract for the sale of the undeveloped one half acre parcel that was referred to in the purchase and sale agreement. Am I correct that in this case the plan was approved? Correct. All creditors were paid? Ultimately, yes. For all intents and purposes, the creditors were paid? That's my understanding. And the debtor was discharged? I cannot be sure. I cannot answer that question one way or the other. I believe that to be true, but I'm not certain. Okay. All right. Go ahead. We had a comment that the court wanted to hear about the applicability of 363M to this situation. And I'd like to begin by addressing that. The parcel that was the subject of the right of first refusal has been sold to a third party for value, correct? Correct. A bona fide purchaser for value? I will take issue with the bona fide as it relates to the issue that we have before us. It's been sold for value to a third party purchaser? Correct. Why isn't this case moved? First of all, because it's not an appeal. This is a collateral attack. We didn't find out about this reciprocal easement agreement until six months, six to seven months after this sale closed. I don't think that's quite right. I think there's a letter from the attorney on October 25th, 2005, saying send me the cross-parking agreements. That's a letter that I sent? Yes. So isn't that exactly? Maldonado was dealing with Ray and Jessen. Right. And saying I want cross-parking as a burden on the larger piece of property. That's the effect of it. Well, what he said was I want to review them and I want you to send them to me. And if I don't like what you see, you know, what I see when I get these, I'm not going to purchase. Or at least I have the right not to purchase. It's a free market, right? It is a simple contingency to a real estate purchase and sale agreement. Are you taking the position that BG Plaza did not know about the cross-easements for parking until the hearing or even after the hearing on November 1st? Absolutely true. We had no idea. If we would have known about that, we would have closed. Well, how do you explain your letter of October 25th, 2005, in which you specifically reference that you want to see the cross-parking agreements? Under paragraph five of the purchase and sale agreement, there is a duty to turn over certain documents. Are cross-parking agreements mentioned in your original purchase agreement of BG Plaza? The initial purchase and sale agreement? Yes. No. Of course not. Then how can you take the position that you didn't know about the cross-parking easements until six months later when your own letter references a demand to BG Plaza people? We didn't know if there were any. No, no, no, no, no, no. That's not quite right. Your request was send me the cross-parking agreements. Assuming that any exist. We had no idea that there were any. You didn't say assuming any exist. You said send me the cross-parking agreements. Because in paragraph five of the purchase and sale agreement. All I'm getting at is that you did know, let me put it this way, a reasonable person could find upon inferences in the record that you did know about the cross-parking agreements. Respectfully, Your Honor, I have to take issue with that. I have to take issue with that. We had no idea that there were any cross-parking agreement. Had we known of the intention to enter into the reciprocal easement agreement, we would have closed. Okay. Can we go back to the 363M? I had some trouble actually in the posture that this case is in now trying to figure out how, if at all, that would apply. As near as I can tell from the research that I've done after receiving the comment from the court, 363M does not apply. The reason that it does not apply is that it relates to appeals. This is not an appeal from an order approving a sale. This is a collateral attack. Okay. Well, let's say that, okay, you have a collateral attack on the bankruptcy court. The state court then says we'll go back to bankruptcy court. And you say, well, no, there's really not jurisdiction there. I should be able to go in state court. Okay. So the reality, though, is once you go to it, let's say you stay in state court, aren't you going to be kicked out because it's basically a collateral attack that the state court is going to reject? And there's res judicata and collateral estoppel and who knows what other doctrines? Well, res judicata would not apply. And the reason that res judicata would not apply would be because of misconduct that had occurred before the bankruptcy court. In other words. So, in other words, you want to stay in state court, take your chance, whatever your chances may be, but all those defenses will be raised. And your basic point is they now have you in the wrong court. Well, that's part of it. Okay. What's the other part? Well, the other part is that our position is that there was fraud on the court. Fraud on who? Fraud on the court. On the bankruptcy court? Correct. How? There was a motion made to approve the sale. The motion made to approve the sale says, we have this purchase and sale agreement with Mr. Maldonado. We have modified that purchase and sale agreement to reduce the price. The only modification that we have made is the reduction of the price. As a matter of fact, that was not true. In May of 2005, the bankruptcy court had approved another sale at a higher price. Between those two times, in August of 2005, this reciprocal easement agreement had initially been formulated. Okay. You know, forgetting the merits at this point, that second part of your claim seems, as you describe it, seems to me to be one that would be appropriately in the bankruptcy court, if you're talking about fraud on the bankruptcy court. So you say that you should be in bankruptcy court for that case? I'm just trying to understand the logistics of this case. I appreciate that. I'll give you the best response that I can. Okay. We believe that the bankruptcy court did not have jurisdiction. If the bankruptcy court did have jurisdiction, then we believe that the sale should be set aside because of the fraud on the bankruptcy court in not disclosing all of the terms. Because what the bankruptcy court had to decide in October of 2005 was whether or not the right of first refusal provision under the purchase and sale agreement had been complied with. Okay. But the lawsuit that you filed in state court is a suit for specific performance? Specific performance and the alternative of damages, of course, which you do with every specific performance suit that you file because you don't know. Because you don't know if you're going to get specific performance because it's equitable, et cetera. But this fraud on the bankruptcy court, is that part of your suit in state court? No. So where does that come from? Once again, if we're in bankruptcy court and if we have to set aside the sale in bankruptcy court because that's where we are, because the bankruptcy court has jurisdiction, then what we have to do is we have to rely on fraud on the bankruptcy court. That really got me confused and I thought I knew a little bit about bankruptcy law. You want a state court to resolve whether fraud was committed in bankruptcy court? I want to defend it. Can you start with a yes or no? You say that one of the fundamental issues in this dispute is whether fraud was committed on the bankruptcy court. Correct? Yes. And you think that issue needs to be resolved? And your question was would it be resolved? Yes, you want that. And so you want to be in state court to have a state court say that fraud was committed on the bankruptcy court? The answer is yes. Of course. I'm all ears. Okay. I would expect that a defense to my claim would be res judicata. In other words, the bankruptcy court decision operating as res judicata in the state court. As a defense to that claim, I would allege that the fraud that was committed on the bankruptcy court and also the fraud that was committed on my client operates to get rid of the affirmative defense of res judicata. Only to that extent would I want the state court to determine that. But in terms of where we are now, you filed a complaint for specific performance and alternatively for damages in the state court. Correct. And isn't the question for us now whether this so-called referral back between the state court and the bankruptcy court, whether the bankruptcy court has jurisdiction either as a core proceeding or under some other theory to hear the specific performance complaint? Isn't that the first question we have to decide? Yes. That actually doesn't have anything to do with fraud on the bankruptcy court because that goes to the procedure and the merits of what might be in the state claim, right? Yes. Now, the plan, the debtor's plan of reorganization at paragraph 6, describes what we're talking about is the battleground lot. That's how we refer to it. I refer to it as the undeveloped half half-acre lot. But in the plan, there's a section on the shopping center itself. Correct. And then there's a discussion of the battleground lot. That's what we're talking about, right? Correct. And in it, the debtor discloses, and the court has approved this plan, that the parcel is subject to a right of first refusal by the prospective buyer. Is that Maldonado? No, that's Battleground Plaza, LLC. That's the LLC. If the pending officer to sell the shopping center closes unanticipated and the prospective buyer, that's who we're talking about, right? I believe in that context, it's my client. Yeah. Elects not to purchase the lot, then the debtor and his partner, Irwin Jensen, shall immediately, blah, blah, blah, blah. So the piece of property that we're about here today is, and whether the right of first refusal is attached to it and whether it should be recognized is provided for in the plan. It's discussed there, that's true. It's discussed in the plan. That's true. Why, then, should the case go to bankruptcy court to resolve this? There has already been a sale. The law is fairly clear, as near as I can tell, that once property has been sold and it's out of the bankruptcy court and it's out of the plan, the bankruptcy court loses jurisdiction over the property. Even under a theory of a rising under or related to? Yes. I've cited in my brief a case from the 11th Circuit, I believe, where someone had purchased some equipment. The order specifically said that you have to remove the equipment from the land in 60 days, and the purchaser didn't do it, and they filed for contempt. This is not equipment. This is dirt. The point being that the court ruled in that case that the bankruptcy court had no jurisdiction even to enforce that as a contempt order because the property had already been sold and it was outside of the estate. I think you've exceeded your time. I think we'll hear from Mr. Garrett. That's my partner. This is Mr. Garrett. I'm sorry. May it please the Court, my name is Russ Garrett. That's what I thought. Did I make a mistake? I said Mr. Garrett.  I am Mr. Garrett. Okay. That's what I thought. I'm sorry. May it please the Court, my name is Russ Garrett. I represent the appellees in this case. The court is correct. The sale of the parcels in this case occurred because of a confirmed Chapter 11 plan,  after the sale of the lot that we've referred to. It was a vacant lot. And in connection with that sale, there was an easement for parking. A collateral attack was filed in state court, Clark County, by the appellants in this case. The court in the state court proceeding correctly recognized that by going forward and making decisions on the claims for relief for specific performance, that she would effectively decide issues that the bankruptcy court had already rendered judgment on, and that was the right of first refusal. Why isn't that, you know, it's over? Property sold, gone. Why isn't that just a normal state court action? And then you come in and say, you know, res judicata. It happens all the time where people file a lawsuit and then the court has to say, well, you know, actually that issue has been decided in another court. I read this order this way, and therefore you're either in or out based on res judicata. I think the state court judge could have done that, but she instead decided to refer it back to the bankruptcy court to determine. I can understand why the inclination might be that, but the real question I have is when you come back to the bankruptcy court, it's certainly not a court proceeding, is it? I think it is a court proceeding. And maybe you could kind of enlighten me on that one. All right. Well, court proceedings relate to property of the state, and although this wasn't property of the state after it was sold, the proceeds were, and it affects the administration. He doesn't want the proceeds. He wants the property. He's filed for specific performance. That is true, which gets back to the property that the court ordered or authorized the order to be sold. If the state court judge actually grants specific performance, it will undo everything that the bankruptcy court did in the Chapter 11 case as it relates to the sale of the property. The Chapter 11 plan approved by the bankruptcy court, A, recognizes that or acknowledges that there is a right of first refusal. Correct. Okay. And I take it this was prepared by debtor counsel? That's my assumption. That was not me. Okay. I understand. Okay. Prepared by debtor counsel, and it says, if it goes forward as anticipated and the right is not exercised, blah, blah, blah, blah, blah. Right? Correct. But that didn't happen. The person to whom the right extended did not say, I don't want this property. Correct? The person whom the right of first refusal extended? Yes. Actually, I think they did say, you're correct, they did say that they wanted the property under different terms. Okay. Why wasn't the appropriate vehicle to go back to bankruptcy court and say we've got a hanging chad, if you will, from the Chapter 11 plan? We told you about the battleground lot, that's this other piece of property. We told you that there was a right of first refusal. We told you in the plan that we had a buyer for this if the owner, if you will, of the right of first refusal chose not to exercise it. He now says he wants to. What do we do? That was actually done in the context of the motion to authorize the sale, not once but twice, in 2005. And Battleground Plaza, the appellant in this case, argued, actually objected to the sale both times. Saying we have the right. In the second time, they said we have the right. And is this where their contention comes in that somehow fraud was committed on the bankruptcy court? Their theory, I believe, is that because counsel for the debtor in possession and the buyers did not turn over what was being circulated as the cross-parking easement agreement at the time to Battleground Plaza, because that wasn't turned over and wasn't disclosed that there was a circulating copy, that that was somehow fraud on the court. Did the bankruptcy court ever resolve whether the owner of the first refusal right had given it up? Yes. It made that determination? It made that determination in the motion, in the objection to the motion, to authorize the sale of the parcel during dependency of the Chapter 11 case in October, November of 2005. And what was that based on? And it said Battleground said they'd given it up. They said that they didn't. The court said that Battleground Plaza did not properly exercise the right of first refusal because its offer did not mirror the terms of the other buyer's offer. It wanted to have the sale extended to December 19th for its approval rather than close on November 15th. Or longer, correct. And so their offer was not the same as Maldonado's. Maldonado would close a month earlier, and they would close a month later. Correct. So this is a precise issue that would be re-litigated? Exactly. It would have to be re-litigated in the state court, and that's the reason why the state court, I think, chose to ask the bankruptcy court to look at it again. And this issue, actually, by the way, was not a novel issue, the cross-parking agreement. If you look at the supplemental excerpt of record at 49 to 52 and 53 to 57, you'll see the discussions between counsel on what everybody understood was going to be this parking and this need for parking. Before the hearing on November 1st? Well, before the hearing in November. And the reason why is it arose when the original shopping center parcel was being negotiated. Everybody knew at that time, and the record demonstrates that, that the parcel was going to require parking. The shopping center owners and the prospective owners, which is Battleground Plaza, knew that, and that's referenced in the supplemental excerpt. But also they recognized that the city of Battleground was going to require it, and that's recognized and acknowledged as well. So this was not a new issue. This is something that Battleground Plaza knew about, knew existed, and when the sale occurred in November of 2005, pursuant to the court's second order, during the pendency of the plan, Battleground Plaza should have known that there would be an easement or some parking arrangement because it was required if there was going to be commercial activity. I found Mr. Shafton's letter, and he says, please provide me with all cross-parking agreements and a copy of the satisfactory Level 1 environmental survey. And that's October 25th, a week before the hearing. Correct. Now, as of that date, it's undisputed that there was a draft easement for parking that was circulating among the parties to the existing agreement that was subject to the right of first refusal. But that agreement was not provided to Battleground Plaza. It wasn't completed. It was still subject to negotiation. And had Battleground Plaza actually mirrored the terms of that offer and said, we accept the terms of this offer and stepped in. Which we don't know the terms of? Well, no, they had a copy of the offer by Maldonado and the acceptance subject to the right of first refusal. Had they agreed to those terms, they would have stepped in. Battleground Plaza would have stepped into the shoes of Maldonado and then negotiated the reciprocal easement agreement. And that's exactly what Judge Snyder in the bankruptcy court recognized in his decisions. So the right of first refusal is a critical issue here. And that was in both of the orders confirming the sale, the court extinguished by order the right of first refusal. What's happening is that after the sale, after the Chapter 11 case was complete, after the decree was entered in December of 2005, seven months later a collateral attack is filed as a state court matter alleging that there was a violation of the right of first refusal, which was extinguished by court order. Was there a venue for Battleground within the federal court for an appeal before the property was finally sold? Battleground Plaza, which gets the court back into the mootness doctrine in 363M, could have filed a notice of appeal. It didn't. It didn't and sought a stay of the sale. It could have sought a stay of the sale. It didn't. Had it done so, then all of those issues would have been preserved. The problem that we're sitting here today is that the question for this court, one of the questions for this court is, is there any relief that we can actually give to the appellant, assuming that they're accurate, assuming that they're right? And I think the answer is no, and that's why 363M is appropriate. I think that's why the mootness doctrine actually assists the court in dispensing with this case. Well, when you say we, I don't think we in the Court of Appeals would really be in any position to give relief. But the real question is, could a bankruptcy court, for example, have given relief within the bankruptcy court? There are two ways that the bankruptcy court could have given relief. The first we've talked about, which is had Battleground Plaza moved, had they filed a notice of appeal, moved for stay, preserved all those issues, would have maintained the status quo on the real property so that nobody was relying upon the sale order. They could have done that. They didn't. The other thing they could have done was they could have moved for relief under 60B on the basis that Battleground Plaza has articulated. Battleground Plaza in this proceeding and the prior proceedings that led up to this have taken the position that they did that. But the first time that you will see a Rule 60B argument based on fraud to the court is in the motion to alter order or amend judgment in 2008 after the case was referred back to Judge Snyder in the bankruptcy court and after Judge Snyder had ruled on his motion for summary judgment. So in terms of the arising under, this is more akin to, say, a declaration within the bankruptcy court that it was right the first time? Correct. Which would be the bankruptcy court looking at its order and simply presumably reaffirming, I suppose, what if the bankruptcy court, now that it was in bankruptcy court, with absent a 60B motion and absent the prior appeal, could the bankruptcy court have determined that it wanted to reverse its order after confirming the right of first refusal waiver? That would be an interesting concept because it had already determined that the right of first refusal was extinguished. So I'm not sure how it would go about doing that procedure. And there would be no appeal from that order? That's another interesting issue. I can't answer that here. But potentially it would have jurisdiction in your view to consider that issue. Absolutely. Or would have. It didn't come out that way. Well, many of the cases that we did cite and. . . Why would it have jurisdiction to consider that issue? To consider the nature and extent and impact of its order? I think that's the. . . That would mean that any trial court could just have an indefinite period of time to revisit its orders? I'm not sure. . . Just to make sure that everybody got the picture right? I'm not sure that that's what the court was concerned about when it accepted jurisdiction. I think what it was concerned about was making. . . You're telling me the order was extant for seven months, no appeal was taken. Correct. Then all of a sudden the debtor asks the bankruptcy court to reopen and say, when I said there was no right of first refusal exercise, I really meant that. Actually, the state court asked the bankruptcy court to open. . . Why couldn't the bankruptcy court treat that as a postcard? I suppose the judge could have treated it as a postcard but didn't. And I think in reading the excerpt of record, the court made clear that the reason why it took the matter on was to make sure that there was no confusion for the bankruptcy court, or for the state court in looking at the court's order. Did it have any jurisdiction to act in any which way? Pardon? What jurisdiction did it have? The asset was already out of the plan, the plan had been approved, the matter had been closed. Are there a number of cases that deal with that, including the Hawaiian case, Hawaiian Airlines case, that allow the court to look at its order and to look at the issues that arose during the Chapter 11 case? Indefinitely. I think indefinitely, absolutely. When the issues arise that affect what the bankruptcy court actually did, then that would be – there are a number of cases that are distinguishable, including the case that Mr. Shafton referred to, the Lemco case, the 11th Circuit case that he was referring to. In that case, and that's the case where the personal property was sold, it was still sitting on the landlord's property, the court said we don't have any interest in that property anymore. There's nobody that's contesting that it was sold properly. They're contesting what happened to it afterward. And in contrast to that, many of the cases that we cited, including the Hawaiian Airlines case, I believe it is, deal with contracts that the court oversaw and approved, such as sales agreements and things like that. I see that my time's up. Thank you. Thank you, Your Honor. I think that your time is up, but I'll give you a minute for rebuttal. Thank you, Your Honor. The easement that was discussed initially that Mr. Garrett alluded to was an easement from 219th Street, which is the thoroughfare, so that there would be street access to this parcel. It had nothing to do with cross-parking agreements. The first reference that you will see to a 60B motion is in the excerpt of record at 200 to 201. It was in a summary judgment reply that was made within the bankruptcy court. We had to guess whether or not there was actually a cross-parking agreement. Why didn't you just appeal this whole thing? Because we didn't know that that cross-parking agreement was there. Without a cross-parking agreement. The cross-parking agreement that you earlier asked for? The letter that I said, I want to see these. But you knew that you hadn't exercised the right and you knew there was an offer. You had the offer, correct? Correct. And you knew you weren't prepared to meet the exact terms of that offer. If we would have known that the cross-parking agreement was there and that we could have jumped in the same way that Mr. Garrett had done, we would have met the exact same terms. The only reason that we wanted it held out so that we could see this cross-parking agreement and to see if it actually existed. Because without the cross-parking agreement, the purchase of the property is a very bad deal. All right. Thank you. Thank both counsel for your arguments. The case just argued is submitted and we're adjourned. All rise.
judges: Hawkins, McKeown, Bea